*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KRISTINA B., | ) | |
| | ) | Supreme Court No. S-14865 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-11620 CI |
| v. | ) | |
| | ) | O P I N I O N |
| EDWARD B., | ) | |
| | ) | No. 6922 - July 3, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Karla F. Huntington, Law Office of Karla F. Huntington, Anchorage, for Appellant. Robin A. Taylor, Law Office of Robin Taylor, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.     INTRODUCTION

Ed and Kristina B.[1] had one son before they permanently separated. After trial, at which the superior court heard evidence about domestic violence on Ed's part and Kristina's medical and substance-abuse issues, the court granted sole legal and primary physical custody of the child to Ed. Kristina appeals many of the court's

---

[1]     We use initials to protect the family's privacy.

findings of fact and legal rulings. We remand to the superior court for reconsideration of (1) whether Kristina's child support obligation should be reduced to reflect the significant cost of her court-ordered urinalysis testing, and (2) whether the restrictive visitation schedule is justified once Kristina has demonstrated a history of sobriety. On all other issues we affirm.

## II.    FACTS AND PROCEEDINGS

Ed and Kristina began living together in 2006, married in 2007, and had a son in 2008. They separated in October 2010. The superior court's decision on custody focused on three major issues affecting the parties' respective abilities to parent: Ed's domestic violence against Kristina, Kristina's substance abuse (involving both alcohol and prescription narcotics), and Kristina's physical challenges related to Crohn's disease and its treatment.

### A.    Ed's History Of Domestic Violence

In earlier proceedings the superior court found that Ed committed domestic violence against Kristina on several occasions and also that he verbally abused her. Following the custody trial, the court found that these incidents constituted a history of domestic violence for purposes of the statutory presumption against awarding custody to a parent with such a history.[2] By the time of trial Ed had completed a state-approved 36-week batterers' intervention course and had also received individual therapy from Dr. Keith Wiger, a counselor specially trained in domestic violence issues. Based on testimony from Ed's therapist that "Ed does not present a risk of harm to [his son]" and testimony from Ed's former fiancée that he was never physically violent or threatening in their relationship, the court found that Ed's violence with Kristina was "unlikely to recur."

---

[2]    *See* AS 25.24.150(g).

### B. Kristina's Substance Abuse

Kristina's history of substance abuse dated back to her childhood; she began abusing alcohol at age 11. Witnesses at the custody trial described her continued abuse of substances to the point of incapacitation. Along with alcohol and prescription narcotics, Kristina used marijuana, cocaine, and Valium. Underlying her drug usage and physical health issues were mental health issues including "depression, anxiety, a suicide attempt (2007), and PTSD."

Kristina admitted that she suffers from alcoholism. She has participated in a number of substance abuse programs but relapsed each time. Her inability to quit drinking contributed to the loss of her teaching career, the custody of her first son, and two marriages, and it exacerbated her Crohn's disease, a serious gastrointestinal disorder that may be very painful. She had three drunk-driving convictions (1991, 2004, and 2007) and a negligent-driving conviction following a 2009 DUI arrest.[3]

Kristina also had a history of abusing the narcotic medications prescribed to treat her Crohn's disease. The court-appointed custody investigator reported that Kristina had "multiple medical providers treating the pain associated with Crohn's Disease, and other medical health problems, and overused or misused medications from these various providers." Kristina denied misuse, but the superior court found that a tape recording "clearly captured the sounds she made while chopping up her pills and snorting them."

Given Kristina's "alcohol, medications, unresolved Crohn's pain and the mental health history," the custody investigator recommended that she go to the Mayo Clinic for assessment and treatment. Kristina did so for about six weeks in the summer

---

[3] Kristina testified that this incident resulted in a reduction of her visitation rights with an older son, from three Saturdays and one overnight per month to telephone contact only.

of 2011, but the custody investigator was unable to retrieve all the records of that visit for her report. The investigator did receive partial records from the clinic diagnosing Kristina with "complex medical [issues], addiction, and a chronic pain syndrome" and recommending a "pain rehabilitation center and after that[] a chemical dependency treatment program." The Mayo Clinic apparently treated Kristina's narcotic dependencies and chronic pain syndrome, but she never completed the recommended dependency program, though she did receive outpatient therapy at Providence Behavioral Health upon her return to Alaska.

The custody investigator also recommended that Kristina be ordered to undergo urinalysis testing for alcohol every 72 hours, and the court adopted that recommendation. Upon her return from the Mayo Clinic, however, Kristina did not resume testing for four to six weeks, and she then had six gaps between tests, leaving open the possibility that she was drinking. Uninterrupted testing resumed in late December 2011, but with positive readings on December 30, 2011, and January 3, 2012.[4]

Kristina appeared to be recovering at the time of trial. In addition to her therapy at Providence Behavioral Health, she was attending meetings of Alcoholics Anonymous. She was working full-time in a professional office setting, had her own residence, and was developing a new social network.

Still, the court had serious questions about Kristina's credibility in light of her demeanor and the inconsistencies between her testimony and that of other witnesses. In particular, the court found her untruthful with regard to the critical issue of her sobriety.

---

[4] Kristina argued that these two results were false positives, and her expert witness testified that the readings could have been caused by a yeast infection. The court rejected this explanation.

## C. Kristina's Crohn's Disease

Kristina was diagnosed with Crohn's disease before her marriage. She had surgeries to treat symptoms of the disease in February and October 2009 and again in February 2011. She was prescribed narcotics after each surgery, and there was evidence she abused these drugs. But it was also undisputed that the pain medications, even if used only as prescribed, could cause her to experience debilitating side effects.

In its custody decision, the superior court highlighted an incident in April 2011. One night Kristina suffered a bout of incontinence in the room where she slept with her son. She was unable to clean up but returned to bed, leaving feces on the floor and her pain medication patches out by the bed. A family friend and a hired custody supervisor were sleeping in adjacent rooms, but Kristina did not alert them or ask for help. In the morning it took them over an hour to rouse her.

On another occasion, the superior court found, Kristina accidentally set a fire in the garage. The court found this may have been due to her failure to use her pain medications responsibly, with due regard for the safety of others.

At trial Kristina reported that she was managing her Crohn's disease with non-narcotic medication after her treatment at the Mayo Clinic; the custody investigator testified that pharmacy records supported this assertion.

## D. Procedural History

This litigation began with domestic violence petitions and interim custody hearings following the couple's separation in October 2010. In January 2011 the court adopted the custody investigator's interim recommendations and limited both parties to supervised custody, giving Kristina four days a week and Ed three. The court also ordered Ed to attend a 36-week domestic violence intervention program for batterers and ordered Kristina to submit to weekly urinalysis. The court ordered psychological examinations of both parties as well, to help determine whether there were underlying

issues that contributed to their behavior, but due to financial constraints neither party complied.

Both parties adjusted their living arrangements to meet the court's interim order for supervised visitation. Ed remained in the family home and his parents moved in to serve as his supervisors. Kristina moved in with a family friend and hired a personal care attendant to act as her supervisor.

When Ed learned of Kristina's incident of incontinence and insensibility described above — and that as a result of it Kristina had been asked to leave the home of the family friend — he filed an emergency ex parte domestic violence petition and was granted interim legal and physical custody of their son. The court's order was based on the testimony of Kristina's personal care attendant that Kristina, because of her "serious substance abuse problem, is unable to care for the child." Kristina's visitation was reduced to one hour of supervised visitation and one hour of telephone or Skype visits per week.

Ed went on to complete the batterers' intervention program, as well as psychological counseling for domestic violence. The court consequently lifted the requirement of the interim custody order that his time with his son be supervised, and his parents moved out. At the time of the custody trial five months later, the child appeared to be doing well in Ed's care.

In its written order following trial, the superior court considered the statutory best interest factors, decided that Ed had overcome the statutory presumption against awarding custody to a parent with a history of domestic violence, and awarded Ed sole legal and primary physical custody of the child. The court also approved Ed's planned move to Texas, finding that there were "legitimate reasons for the move, both economic and familial," and that it was not intended to interfere with Kristina's parenting.

Kristina filed this appeal, challenging: (1) the superior court's finding that Ed had overcome the statutory presumption of AS 25.24.150(g) against awarding him custody; (2) the weight the court gave to Ed's domestic violence in assessing the best interest factors of AS 25.24.150(c); (3) the court's failure to apply AS 25.24.150(k) to hold that the conditions that made Kristina an unfit parent were attributable to Ed's domestic violence and therefore could not form the basis of the court's custody decision; (4) the court's finding that Kristina committed an act of domestic violence when she accidentally started the fire in the garage; (5) the court's failure to account for the costs of Kristina's medication and her court-ordered urinalysis testing in its calculation of her child support obligation; (6) the court's failure to allocate a part of the visitation costs to Ed; (7) the restricted visitation schedule that follows Kristina's year of demonstrated sobriety; and (8) the court's approval of Ed's planned move to Texas.

## III.  STANDARDS OF REVIEW

"Trial courts have broad discretion in determining child custody."[5] We will set aside factual findings only if they are clearly erroneous.[6] Factual findings are clearly erroneous when, based on the entire record, we are left "with a definite and firm conviction . . . that a mistake has been made, even though there may be evidence to support the finding."[7] We afford particular deference to factual findings based primarily

---

[5]    *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (citing *Smith v. Weekley*, 73 P.3d 1219, 1222 (Alaska 2003)).

[6]    *Id.*

[7]    *Id.* (quoting *Jenkins v. Handel*, 10 P.3d 586, 588 (Alaska 2000)) (internal quotation marks omitted).

on oral testimony, because the trial court is better suited to judge the credibility of witnesses and weigh conflicting evidence.[8]

We will find that a trial court abused its discretion in a custody case if it "consider[s] improper factors in making its custody determination, fails to consider statutorily mandated factors, or assign[s] disproportionate weight to particular factors while ignoring others."[9]

## IV.    DISCUSSION

### A.    The Trial Court Did Not Err In Determining That Ed Overcame The Domestic Violence Presumption Of AS 25.24.150(g).

#### 1.    The presumption was in effect.

Alaska Statute 25.24.150(g) creates a rebuttable presumption that a parent with a history of domestic violence may not be awarded legal or physical custody.[10] The statutory term "history of domestic violence" is defined in the next subsection, .150(h), to mean either that (1) "during one incident of domestic violence, the parent caused serious physical injury," or (2) "the parent has engaged in more than one incident of domestic violence."

The parties agree that the presumption was in effect against Ed.  In the superior court's first interim order — in which it held that both parents needed supervised visitation — the court found that Ed had once dragged Kristina outdoors by

---

[8]    *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (citations omitted); *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013) (citing *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

[9]    *Ebertz*, 113 P.3d at 646 (quoting *Barrett v. Alguire*, 35 P.3d 1, 5 n.5 (Alaska 2001)) (alterations in original) (internal quotation marks omitted).

[10]    "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."  AS 25.24.150(g).

the hair in sub-zero temperatures, had beaten her with a belt and shut her up in a small room, and in a separate incident had slapped her face. Under the statute, these incidents unquestionably constitute a history of domestic violence.

> **2.    The superior court did not clearly err in finding that Ed had successfully completed a batterers' program and that he did not engage in substance abuse.**

Overcoming the rebuttable presumption of AS 25.24.150(g) is addressed in subsection (h):

> The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.

The evidence supports the superior court's conclusion that Ed rebutted the presumption.

First, Ed completed a 36-week family violence intervention program at Alaska Family Services. While that alone was sufficient to satisfy the statutory requirement that he complete "an intervention program for batterers," the evidence showed that he also completed a four-hour parent education class at Alaska Family Services and received one-on-one counseling from a psychologist with expertise in domestic violence issues.[11]

---

[11]    *See Stephanie F. v. George C.*, 270 P.3d 737, 753-54 (Alaska 2012) (finding that 12 weeks of one-on-one therapy might be adequate to overcome the presumption even where the parent failed to complete a formal batterers' program, especially in light of evidence that the parent's acts of domestic violence were "situational" and "unlikely to reoccur").

Kristina argues, however, that Ed did not meet his burden of proving that he *successfully* completed the program. She argues that his certificate of completion proves only that he attended the classes, not that he absorbed what he was taught. She also asserts that the legislature must have intended there be proof in each individual case that the program succeeded before the presumption against an award of custody can be overcome.

But Kristina never questioned the program's effectiveness during trial, and we will not weigh evidence in the first instance.[12] In any event, her arguments — based primarily on Ed's credibility — are not persuasive. As the superior court found, there was other evidence besides the certificate and Ed's testimony to support the conclusion that his completion of the program was successful. His therapist Dr. Wiger, who was qualified as an expert in domestic violence issues, testified about Ed's internalization of the program's lessons. The custody investigator, too, independently determined that Ed had successfully completed the program, based both on Dr. Wiger's records and her own knowledge of the program's curriculum. Both Dr. Wiger and Ed's former fiancée testified that Ed's violence toward Kristina was not reflected in other aspects of his life and was therefore unlikely to be repeated. The superior court found Ed credible on this issue, and it was in a better position than we are to weigh the evidence and assess the credibility of witnesses.[13]

---

[12] *Sagers v. Sackinger*, 318 P.3d 860, 866 (Alaska 2014); *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005). Here, the superior court observed that "no successful challenge was made to the evidence that Ed studiously attended and completed the program."

[13] *See, e.g.*, *Stephanie F.*, 270 P.3d at 749 ("[T]he trial court was in a better position to assess the credibility of the witnesses, the overall persuasive force of the evidence, and the persuasiveness of the expert testimony.").

Overcoming the presumption also requires a finding that the "perpetrating parent . . . does not engage in substance abuse."[14]  The superior court found that Ed did not have a substance-abuse problem, and Kristina does not challenge this finding on appeal.

### 3. The superior court did not clearly err in finding that the child's best interests require Ed's participation as a custodial parent.

In addition to the successful completion of a batterers' intervention program and the absence of any substance-abuse problem, a parent seeking to overcome the presumption of AS 25.24.150(g) must show that it is in the child's best interests that the parent have custody:  the statute's listed justifications are that "the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child."[15]  On this issue the superior court found:

> Kristina is a chronic, long-term alcoholic and prescription drug abuser who has been sober only about three months (as of the date of trial). . . . She has had four to five previous unsuccessful attempts at substance abuse treatment and recovery.  Based on the severity and length of her addiction, as well as the very concerning evidence that she has not been truthful about her sobriety, the court must find that Kristina meets the statutory definition of a parent who "engages in substance abuse that affects her parenting abilities."

Kristina argues that this finding was clearly erroneous; she contends that she was sober longer than the three months the superior court credited to her.  She specifically disputes the accuracy of two positive urinalysis results in the months leading up to trial.  She correctly points out that the superior court erred when it attributed to her

---

[14]     AS 25.24.150(h).

[15]     *Id.*

-11-                                                          6922

expert witness the theory that "possible use of hand sanitizer wipes may account for the above-normal biomarker readings," a theory the superior court rejected.[16] But the court's erroneous attribution of this theory to Kristina's expert does not affect its ultimate conclusion — that there was no credible, innocent explanation for the positive urinalysis results. Taking into account the positive readings, the court found that Kristina's period of sobriety had commenced no earlier than February 2012, only a few months before trial. On that ground, and considering "the severity and length of her addiction" and "the very concerning evidence that she has not been truthful about her sobriety," the court found that Kristina was "engaging" in substance abuse for purposes of section .150(h). This finding was not clearly erroneous.

The superior court also found that even if Kristina's recent sobriety precluded a finding that she was currently "engage[d] in substance abuse," her history of drug addiction and alcoholism nonetheless constituted "other circumstances" affecting the best interests of her son for purposes of subsection .150(h), thus still "requir[ing] Ed's participation as a custodial parent for [their son]." This finding also has substantial support in the record.

Finally, Kristina argues that her substance abuse history is not so disabling as to "require" Ed's participation as a custodial parent. But the superior court is in a better position to make that judgment, since it observed the parties and witnesses over the course of the litigation and can better assess the circumstances.[17] Given the seriousness of Kristina's past substance abuse and her uncertain future, there was

---

[16]    Although Kristina's expert, Dr. Alfred Staubus, made reference to tests showing that health care workers who use a lot of hand sanitizer may absorb enough alcohol through the skin to generate biomarkers, he did not rely on that theory to explain Kristina's positive results; rather, he cited the metabolic effects of a fungal infection.

[17]    *Stephanie F.*, 270 P.3d at 749.

substantial support for the superior court's finding that Ed's participation as a custodial parent is necessary to the child's best interests. The superior court is entitled to substantial deference when it determines that the statutory presumption has been overcome,[18] and its finding that it was overcome in this case is not clearly erroneous.

**B. The Superior Court Adequately Weighed Ed's History Of Domestic Violence In Considering The Child's Best Interests.**

Separately from the presumption addressed in AS 25.24.150(g) and (h), AS 25.24.150(c) requires that a superior court base its custody decision on the best interests of the child and lists the factors the court should consider in making a best interests determination. "Though a trial court cannot assign disproportionate weight to particular factors while ignoring others, it has considerable discretion in determining the importance of each statutory factor in the context of a specific case and is not required to weigh the factors equally."[19]

Kristina challenges the court's analysis of the seventh factor — "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents"[20] — arguing that the court gave too little weight to Ed's history of domestic violence. The court addressed Ed's domestic violence in the context of the statutory presumption of subsection .150(g), discussed above; the court made credibility findings and assessed how the domestic violence could affect the child's needs. The court clearly considered the issue seriously. Kristina's argument that the court gave the factor too little weight is really an argument that the

---

[18]     *Id.*

[19]     *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010) (quoting *Barlow v. Thompson*, 221 P.3d 998, 1005 (Alaska 2009)) (alterations and internal quotation marks omitted).

[20]     AS 25.24.150(c)(7).

-13-                                                                                                 **6922**

court clearly erred in finding (1) that Ed was credible whereas Kristina was not; (2) that the violence was "unlikely to recur"; and (3) that it was in the child's best interests that Ed participate as a custodial parent.

But these factual findings are not clearly erroneous. As we recently observed in a similar case:

> [T]he trial court was in a better position to assess the credibility of the witnesses, the overall persuasive force of the evidence, and the persuasiveness of the expert testimony. . . . [The] difficult and important assessment of [gauging the risk of future violence] is one best made by the trial court.[21]

The same is true here. Witnesses at trial included Kristina's ex-husband, five long-time friends and family members, her personal care attendant, her AA sponsor, her employer, and four new friends from AA. Supporting Ed's rehabilitation was testimony from his ex-fiancée, his therapist, and several experts. The superior court explained in detail the reasons for its credibility findings, and its findings support its ultimate decision. The court did not abuse its discretion when it weighed the domestic violence factor in the best interests analysis.

## C. The Superior Court Did Not Err By Failing To Apply AS 25.24.150(k).

Kristina argues that once the superior court concluded that her substance abuse rendered her incapable of parenting, it was required to address AS 25.24.150(k), which states that "[t]he fact that an abused parent suffers from the effects of the abuse does not constitute a basis for denying custody to the abused parent unless the court finds that the effects of the domestic violence are so severe that they render the parent unable to safely parent the child." Kristina argues that her substance abuse and post-traumatic stress disorder (PTSD) are effects of Ed's domestic violence, and the superior court erred by relying on these conditions to deny her custody of the child.

---

[21] *Stephanie F.*, 270 P.3d at 749.

The superior court did not err. First, Kristina failed to demonstrate that her substance abuse was the result of Ed's domestic violence. To the contrary, the evidence showed that her history of abuse had begun over 25 years earlier, long before she met Ed in 2006.

Kristina makes the same argument with regard to her PTSD, relying on the expert testimony of a substance abuse counselor who diagnosed her with PTSD caused by domestic violence, with Ed as the perpetrator. But the superior court did not cite Kristina's PTSD as "a basis for denying custody" to her; its primary concerns with her parenting involved her substance abuse and the physical challenges posed by her Crohn's disease.[22] In the superior court's view, these were the factors that caused her to neglect and recklessly endanger the child, making her an unsafe parent. Since the superior court did not base its custody award on Kristina's PTSD, AS 25.24.150(k) is irrelevant to that issue.

**D.      The Superior Court Did Not Err In Determining That Kristina Committed An Act Of Domestic Violence.**

The superior court found that Kristina had committed an act of domestic violence when she accidentally set a pillow on fire in the garage of the friend's house where she was staying after her separation from Ed; it declined, however, to find that Kristina had a history of domestic violence for purposes of the statutory presumption against custody.[23] Kristina disputes that she caused the fire and that the facts as alleged could constitute domestic violence.

---

[22]     The superior court cited Kristina's "PTSD-like symptoms" when discussing each parent's willingness to foster the child's relationship with the other parent, a factor it found to favor neither parent. The court also referenced Kristina's PTSD as one of the "risk factors for relapse" when it set out the conditions for her move from supervised to unsupervised visitation.

[23]     *See* AS 25.24.150(g).

The superior court's findings of fact were based on the testimony of Kristina's personal care attendant.[24] The attendant testified that Kristina had been in the garage about 30 minutes before the fire was discovered; that Kristina "had fallen asleep before, smoking a cigarette in the garage, quite a few times"; and that no one else was home when the fire started except herself and the child. Based on this testimony and Kristina's failure to refute it, the court found that Kristina had started the fire. In light of the evidence, Kristina's bare argument that "other people could have caused the situation" is not sufficient to show that the court clearly erred.

The superior court considered whether these facts constituted reckless endangerment, a crime that is committed when one "recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."[25] The court found that Kristina was "frequently dazed" during this period of her life, possibly due to her pain medications; that even if using the medications properly "she still was responsible for taking her medication in a safe manner, which includes a duty to avoid engaging in activities that would be hazardous if performed while impaired"; and that "leaving a lit cigarette in contact with flammable material" was one such hazardous activity. The court therefore found she had acted recklessly and had endangered her son's safety. Because recklessly endangering a family member constitutes an act of domestic violence,[26] the court found that Kristina had committed an act of domestic violence against her son.

Kristina argues that there was no evidence she was under the influence of narcotics when the fire started. But the court found only that "the most likely cause of Kristina's frequently dazed condition during this time period was her abuse of

---

[24] The attendant was hired to supervise Kristina's visits with her son.

[25] AS 11.41.250.

[26] *Williams v. State*, 151 P.3d 460, 467 (Alaska App. 2006) (citing AS 18.66.990(3); AS 11.41.520).

prescription narcotics." And while the court noted that "leaving a lit cigarette in contact with flammable material" is a hazardous activity "if performed while impaired," the activity is equally hazardous — and equally reckless — if the actor is not impaired.

Kristina also argues that in finding her conduct reckless, the superior court ignored the fact that she had hired the personal care attendant to act as a supervisor and thus had a "back-up plan to keep [the child] safe that day." But the fact that the superior court had correctly anticipated Kristina's recklessness when ordering supervised visitation does not make the conduct less reckless. Indeed, the presence of the attendant meant that there were two people exposed to the risk of harm, not just one. On these facts, we hold that the court did not abuse its discretion in deciding that Kristina had committed an act of domestic violence.[27]

Finally, we reject Kristina's argument that the finding of domestic violence violated her due process rights. Kristina argues that she had no opportunity to refute the testimony of the personal care attendant by cross-examining her on the issue or presenting her own contrary evidence, because she did not anticipate that the testimony would be used to support a finding that she committed an act of domestic violence. But this argument is not supported by the record. Kristina had the opportunity to cross-examine the attendant about the fire incident, which was clearly relevant to her parenting capabilities, but she chose to focus on other issues. She did not ask for more time to prepare to meet the evidence, nor does she explain what benefit she would have gained from more time or more notice. Once the evidence of domestic violence came in, the

---

[27]    *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (observing that in the custody context, factual findings are reviewed for clear error and the application of facts to law is reviewed for abuse of discretion).

-17-                                                                                          **6922**

superior court was obliged to consider it.[28] Since the facts in this case support the court's finding, we see no error.

E. **On Remand The Superior Court Should Account For The Cost Of Court-Ordered Urinalysis Testing In Kristina's Child Support Obligation.**

Kristina challenges the superior court's award of child support, which requires that she pay $537.58 per month pursuant to the formula of Alaska Civil Rule 90.3. "The superior court presumptively does not abuse its discretion when it awards child support based on Civil Rule 90.3."[29] Kristina argues that the superior court should have deviated from Rule 90.3 in her case, reducing her monthly child support obligation because of her medication costs and the cost of court-ordered urinalysis.

A trial court may deviate from the Rule 90.3 formula if the party seeking the deviation proves by clear and convincing evidence that manifest injustice will result if the support award is not varied.[30] Such a showing is considered "good cause" for variance.[31] In order to show good cause, therefore, Kristina had the burden to show that her "health or other extraordinary expenses" made the Rule 90.3 formula unjust.[32]

Kristina asserts that she has a net income of about $2,600 per month, that her monthly out-of-pocket cost for Crohn's disease medication is $1,800, and that her

---

[28] AS 25.24.150(c)(7) ("In determining the best interests of the child the court shall consider . . . any evidence of domestic violence . . . in the proposed custodial household . . .").

[29] *Coghill v. Coghill*, 836 P.2d 921, 924 (Alaska 1992) (citing Alaska R. Civ. P. 90.3, Commentary VI ("[T]he rule presumes that support calculated under 90.3(a) or (b) does not result in manifest injustice.")).

[30] Alaska R. Civ. P. 90.3(c)(1).

[31] *Id.*

[32] *See* Alaska R. Civ. P. 90.3, Commentary VI (B).

court-ordered urinalysis testing costs about $1,440. She points out that these costs together surpass her income and contends that she is left with nothing for living expenses or gas money for visits with her son. She claims that this burden is unjust.

There is support in the record for the court's failure to vary the Rule 90.3 formula because of the cost of Kristina's medication. She submitted none of her medical bills as evidence; Ed attested by affidavit that most of the cost of her medication had been covered by insurance during their marriage; and Kristina confirmed that she had health insurance available through her employer. We conclude that the superior court did not clearly err when it rejected a variance based on the cost of Kristina's medication.

But the court-ordered urinalysis testing is another matter. Kristina testified that the testing, which she was required to undergo every 72 hours, costs $144 each time, for a total monthly cost of approximately $1,440. There appears to be no other evidence in the record about the cost, and Ed's only argument against a variance based on the cost is that the testing requirement is only temporary.[33] But the cost is significant, it is court-ordered, it is unlikely to be covered by insurance, and it may well impact Kristina's ability to visit her son. The superior court should revisit this issue on remand and make a specific finding as to whether the cost of the mandatory urinalysis testing justifies a deviation from the Rule 90.3 calculation.

**F.    The Court Did Not Err When It Refused To Order Ed To Bear Some Of The Visitation Costs.**

Kristina also argues that the court should have required Ed to share the transportation costs for her visits with her son. Rule 90.3(g) requires the trial court to

---

[33]    As Ed acknowledges, whether a cost is permanent or temporary is a relevant consideration when a parent seeks to modify child support based on a "material change in circumstances," *see Patch v. Patch*, 760 P.2d 526, 530 (Alaska 1988) ("[A] trial court should be reluctant to modify child support obligations when the obligor's loss of income appears only temporary."); and this case presents an initial calculation of child support, not a modification.

"allocate reasonable travel expenses which are necessary to exercise visitation between the parties as may be just and proper for them to contribute." We review the court's allocation of visitation expenses for an abuse of discretion.[34]

The superior court did not explain its failure to split the costs, but the limited evidence on the issue showed that Kristina drove from Anchorage to Wasilla to pick up the child for her bimonthly visits with him and that she missed a number of visits without prior notice, causing Ed to incur the cost and inconvenience of driving the child to the pickup point at a supermarket in Wasilla. There was evidence that Kristina exaggerated the cost of her travel and that the true monthly cost of the visits was less than $40. We cannot find on this record that the superior court abused its discretion on this issue.[35]

### G. On Remand The Superior Court Should Reconsider The Limits On Kristina's Visitation Following A Year Of Sobriety.

The superior court ordered that Kristina's visitation will increase as she demonstrates that she is successfully addressing her problems with substance abuse. According to the order, "[a]fter Kristina has had six months of documented and uninterrupted total sobriety, and providing she has continued in her current treatment to address her management of Crohn's pain and her PTSD, which are both risk factors for relapse, the visitation schedule shall change." Kristina is then allowed mostly unsupervised visits, and she can transition into entirely unsupervised alternate weekend

---

[34] *C.R.B. v. C.C.*, 959 P.2d 375, 384 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004).

[35] Kristina cursorily challenges the superior court's failure to "address the question of how to divide airfare to Texas, if/when Ed actually moves." But as Ed responded to this argument in the trial court, the move was then "extremely speculative," and the issue of shared costs is better addressed in the context of the parties' current finances if and when the move occurs.

visits "after one full year of total, uninterrupted and documented sobriety and compliance with her therapy programs." This arrangement will constitute "[t]he final transition." Kristina argues that this unequal visitation schedule, limiting her to alternate weekends even after she has demonstrated long-term sobriety, is against public policy and should be reversed.

The superior court essentially adopted the custody arrangement recommended by the custody investigator. Notably, the investigator predicted that "if Kristina is 100% sober and is not incapacitated due to a flare-up in her Crohn's Disease or treatment . . . she is likely able to meet [her son's] basic needs." The court found that Kristina was "not capable *at this time* of meeting [the child's] needs because of her history of substance abuse." (Emphasis added.) The court did not find that Kristina would *never* be capable of meeting her child's basic needs; we are therefore troubled by the prospect that the "final transition" to fully unsupervised visitation, after a year of proven sobriety, still leaves Kristina with visits of only every other weekend.[36] Custody orders involving equally capable parents typically allow for extended summer visits and shared holidays.[37] We do not mean to imply that an unequal schedule of custody and visitation may not be warranted in this case; but the court's order does not explain why such a schedule will still be justified once Kristina's primary parenting issue — her substance abuse — has been resolved. We remand for the superior court's further consideration of the issue. The court may revise the visitation schedule that is to follow

---

[36] The superior court did, on reconsideration, allow Kristina to have a half-day's visitation on Thanksgiving Day.

[37] *See, e.g.*, *McLane v. Paul*, 189 P.3d 1039, 1040, 1042 (Alaska 2008); *Morino v. Swayman*, 970 P.2d 426, 427 (Alaska 1999); *see also* AS 25.20.060 ("An award of shared custody shall assure that the child has frequent and continuing contact with each parent to the maximum extent possible."); *Elliott v. Settje*, 27 P.3d 317, 323-24 (Alaska 2001) (discussing shared custody between equally capable parents).

Kristina's "final transition" to fully unsupervised visitation; it may give a fuller explanation of why Kristina's visitation should remain unusually restricted; or it may hold the issue in abeyance until the precondition of demonstrated sobriety has been met, and then set the visitation schedule that is most appropriate under the circumstances.

## H. The Court Did Not Clearly Err In Finding That Ed's Move To Texas Was Permissibly Motivated.

At the time of trial Ed was contemplating a move to Texas to be closer to his parents. The superior court approved of this plan, finding that Ed had "legitimate reasons for the move, both economic and familial." Kristina challenges this finding, arguing that Ed's behavior shows that he is motivated by an intent to hurt Kristina and "damage the mother-son relationship."[38]

Based on Ed's testimony the court expressly found that his move to Texas was prompted by legitimate reasons — primarily his desire to live closer to his parents, who had bonded with their grandson when they came to Alaska to supervise Ed's custody. The court found "no evidence to indicate [Ed's] motivation is to thwart Kristina's contact with [the child]," and on appeal Kristina points only to evidence that Ed had hurt her in the past, not any evidence specifically related to his reasons for moving. The superior court's finding of motivation depends almost entirely on its

---

[38] A parent's "proposed move is legitimate if it was not primarily motivated by a desire to make visitation . . . more difficult." *Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2002) (quoting *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989)) (internal quotation marks omitted). If not improperly motivated, a parent's move out of state will not require a modification of custody as long as the move is in the best interests of the child. *Id.* at 316-17.

assessment of Ed's credibility, and we therefore give it particular deference.[39]  Kristina has not persuaded us that the finding is clearly erroneous.

## V.    CONCLUSION

We REMAND to the superior court for reconsideration of two issues, as explained above:  (1) whether the costs of court-ordered urinalysis testing should reduce Kristina's child support obligation, and (2) whether a more liberal visitation schedule should follow Kristina's period of demonstrated sobriety.  On all other issues, we AFFIRM the decision of the superior court.  We retain jurisdiction.

---

[39]    *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) ("The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' " (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011))).