*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CAROLINE J., | ) | |
| | ) | Supreme Court No. S-15693 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-12-01623 CI |
| v. | ) | |
| | ) | O P I N I O N |
| THEODORE J., | ) | |
| | ) | No. 7044 – August 28, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Johnny O. Gibbons, Dickerson & Gibbons, Anchorage, for Appellant. Theodore J., pro se, Palmer, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

At the end of Theodore J. and Caroline J.'s marriage,[1] the superior court granted Caroline a long-term domestic violence protective order and awarded her interim sole physical and legal custody of the couple's three children. During the pendency of the divorce and custody trial, the superior court ordered reunification counseling for

---

[1]    Pseudonyms and initials have been used to protect the family's privacy.

Theodore and the children, but Caroline continually failed to bring the children to the counseling sessions, and the court found she had engaged in parental alienation. After Theodore completed a domestic violence intervention program, the court awarded the parents shared physical and joint legal custody of the children. Caroline appeals. We affirm the superior court's custody order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Theodore J. and Caroline J. married in June 2004. Theodore works for the United States Postal Service (USPS) and Caroline is a homemaker. Caroline and Theodore had three children during their relationship: Thomas, born in 2003, Katrina, born in 2004, and Taylor, born in 2006.

The parties had been having trouble with their marriage and participated in a marriage workshop through their church in 2008. The couple continued to have problems after the workshop.

In May 2012 the parties' problems appear to have worsened. Caroline filed a petition for a long-term domestic violence protective order on May 22, alleging that a few days earlier she and Theodore got into an argument and he hit her with a pot. On May 25 Theodore filed for divorce.

### B. Proceedings

In August 2012 the court held an evidentiary hearing on Caroline's petition for a protective order. The court heard testimony from Caroline and from Rhonda Street, the domestic violence investigator who processed her petition. Street testified that Caroline had presented as very nervous. And she testified that Theodore continually called Caroline's phone. Caroline alleged that Theodore had hit her with a pot on May 18, a Friday. She testified that immediately afterward she left and went to a friend's house, where she stayed until the following Monday. She testified that on Tuesday she

filed her petition for a domestic violence protective order. Theodore denied the allegations. He testified that on May 18 Caroline went to Anchorage with a friend and he came into the city to pick her up on Monday. He said that she left Monday night to get a snack with the children but did not return. He testified that he repeatedly called her phone the next day trying to determine where she and the children were. Theodore also testified that after he told Caroline he wanted a divorce she threatened to kill herself.

The superior court granted the petition for a long-term domestic violence protective order and ordered professionally supervised visitation. Later, the court issued an interim custody order awarding sole physical and legal custody to Caroline based on the long-term domestic violence protective order.

During the same time period, the children's therapist, Linda Ann Rasmussen, notified the Office of Children's Services (OCS) that she thought the children had been abused. During the OCS interviews, Theodore admitted to accidentally cutting the youngest, Taylor, while spanking him, because the spoon Theodore was using broke. The OCS worker testified at trial that her supervisor directed her to substantiate the abuse even though she believed the two older children were coached.

During the first day of testimony, Rasmussen testified the children told her that since their parents' separation they believed their father had stolen their bikes, entered their home without permission, and ripped pages out of one of their Bibles. Rasmussen accepted the children's statements as true, and she repeatedly reminded the court that OCS had "substantiated abuse" of the children. But the court expressed concern over Rasmussen's testimony, noting that she might be "over-enmeshed" with Caroline and could not give an unbiased opinion. The court ordered Theodore and the children to begin reunification counseling, and it set another custody hearing for July 1, 2013, a few months later.

The parties could not agree on a reunification counselor, so the court picked Tom R. Lytle and ordered reunification counseling to begin immediately, with sessions up to twice a week. But Caroline failed to bring the children for most of the appointments, missing those scheduled for July 11, 26, and 29 and August 2, 9, 16, and 26. Lytle stated that based on his observations of the children, Caroline was actively interfering with counseling. Based on this information, the court ordered Caroline to bring the children to all future sessions under threat of sanctions.

The majority of the custody trial was held on October 7 and 8, 2013. Theodore, Caroline, Rasmussen, Lytle, and Kathleen Anne Chambers, the OCS worker that had interviewed the children, all testified.

Lytle testified that his impression of Theodore was that he "was willing to make the necessary changes" and "willing to take ownership" of the hurt he had caused the children in the past. He testified that at the first session the children were anxious but excited to see their father. Lytle testified that there were no "red flags" and that the mood was more relaxed at the end of the session. He testified that at the next session things were going well until Thomas began asking Theodore why he had stolen their bikes. Lytle noted that Thomas did not ask *if* Theodore had stolen their bikes; Thomas appeared to have assumed it had happened. At the next session Thomas brought in a piece of cardboard with accusatory questions written on it. Lytle testified that some of the accusations seemed too sophisticated for a child, like Thomas's assertion that Theodore could do community service at Alaska Family Services to pay for a visitation supervisor. Lytle testified that given the incongruence between how one session ended and the next began, he believed that something "[t]ranspired . . . in between those times."

Chambers, the OCS investigator, testified that Caroline had refused to let her interview the children in a private place, so she had to interview them somewhere where Caroline could hear through the door. She stated that the two older children

presented as though they had been coached, raising their voices so that Caroline would hear them say certain things. She explained that her supervisor directed her to substantiate the allegations of harm, and she testified that she did not think Theodore posed a risk of harm to the children. Finally, she testified that Caroline had not explained to Thomas that the reason his father did not come to his football games was because of the protective order, not because he no longer loved him.

Theodore testified that at the first session the children were happy to see him, but at subsequent sessions Thomas began asking him questions that he thought "were just a little bit too mature for a 10-year-old to be asking." He felt that Thomas was asking him adult questions about the divorce that he could only have learned from Caroline. He explained that Thomas brought up an email from Caroline's attorney about the utilities being shut off at the house and made accusations about Theodore's salary. And he testified that whenever he answered Thomas's questions, Thomas would come to the next session with rebuttals. Theodore stated that he believed Caroline was undermining him outside of counseling and felt that it was impossible for him to make any progress.

Rasmussen testified that she never felt like the children were coached. On cross-examination she explained that she did not try to challenge or change any of the children's beliefs. These included their beliefs that their father stole their bikes, entered their house at night to steal Katrina's clothing and destroy her Bible, and ignored them in public.

The remaining day of the trial was continued. The superior court ordered that, in the interim, reunification counseling would resume and Caroline would not be allowed to come to the appointments or object to any of the scheduled times. It also directed that Theodore would provide transportation to the sessions with another adult in the vehicle. But on the first day of the renewed reunification sessions, Caroline kept

the children out of school until her lawyer told her she needed to bring them to counseling. On the second scheduled day of counseling, the children were walking to Theodore's car when Thomas received a call from Caroline and thereafter all three children refused to go with Theodore. The court found Caroline in contempt and ordered her to pay $200 for every missed counseling appointment.

The superior court held its final day of testimony on the custody issues on January 13, 2014. Caroline offered reasons for the missed counseling appointments. She also testified that she believed Theodore took pages out of Katrina's Bible and stole the children's bicycles. Caroline stated that she had not tried to undermine Theodore during counseling. But she admitted that she had told the children it was their father's fault that there was no hot water and that they had to move out of the home. Additionally, she admitted to telling Thomas that he did not need to go to reunification counseling.

The court concluded that Theodore had a history of domestic violence, but it ruled that if he completed a domestic violence intervention program he would rebut the presumption against being awarded custody.[2] The court stated that it was very concerned

---

[2]     *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."); AS 25.24.150(h) ("The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.").

with Caroline's "willful disregard of court orders," including her "willful refusal to bring the children to reunification counseling with Mr. Lytle." The court noted that Caroline had not contested the reunification order; she had just given excuses each time for why the children could not go. The court commented:

> [Caroline's] actions demonstrate that she is not interested in the children having a quality relationship with their father; in addition to her frequent, willful refusal to take the children to reunification counseling, I have her reaction today [when a witness gave testimony contradictory to Theodore].

> I happen[ed] to be watching [Caroline]; I have never throughout these proceedings seen such an expression of joy on either party's face as I saw on [Caroline]'s face when [the witness] made that comment. She was thrilled, thrilled that the children . . . , according to [the witness,] said something different than what [Theodore] said they said. But her reaction spoke volumes to me. And she immediately saw me watching her and changed her reaction.

The court found that Caroline's demeanor "corroborate[d] in a genuine, unrehearsed spontaneous way the exact concerns [Theodore] ha[d] been expressing . . . for the last six months or more"; that Caroline had "put any number of obstacles between [Theodore] and his children to undermine his ability to reestablish a relationship"; and that Caroline had engaged in parental alienation.

The court ordered that Caroline would continue to have legal and physical custody of the children until June 1, at which point the parents would exercise shared physical and joint legal custody so long as Theodore had completed the domestic violence intervention program. After Theodore filed proof of his completion of the program with the court on June 30, the court ordered the change in physical custody to take place immediately. It issued its final order on September 2 confirming its earlier decision. Caroline appeals.

## III. STANDARD OF REVIEW

"The trial court has broad discretion in child custody decisions."[3] We will reverse the superior court's decision only when "the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[4] An abuse of discretion exists where the superior court "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[5] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[6]

"Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[7]

---

[3]     *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005) (citing *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[4]     *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996) (citing *Farrell v. Farrell*, 819 P.2d 896, 898 (Alaska 1991)); *see also Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

[5]     *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998) (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

[6]     *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002) (quoting *Siekawitch*, 956 P.2d at 449) (internal quotation marks omitted).

[7]     *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014); *Stephanie F. v. George C.*, 270 P.3d 737, 754 (Alaska 2012) (remanding for superior court to decide whether presumption was rebutted); *Misyura v. Misyura*, 242 P.3d 1037, 1041 (Alaska 2010) (treating rebuttal of the presumption as a question of fact).

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err By Finding That Theodore Rebutted The Domestic Violence Presumption.

Because the superior court found that Theodore had a history of domestic violence under AS 25.24.150(g), there was a rebutable presumption that he could not be awarded joint physical or legal custody of the children.[8] That presumption may be overcome by proof

> [1] that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, [2] that the parent does not engage in substance abuse, and [3] that the best interests of the child require that parent's participation as a custodial parent [a] because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or [b] because of other circumstances that affect the best interests of the child.[9]

The perpetrating parent must satisfy all three prongs of the statute.[10]

No party argues that Theodore abuses substances, and it is uncontested that he completed the domestic violence intervention program. Thus, the issue is whether the

---

[8] *See* AS 25.24.150(g).

[9] AS 25.24.150(h). We have inserted bracketed numbers and letters to illustrate our analysis.

[10] *Weinberger v. Weinberger*, 268 P.3d 305, 309-10 (Alaska 2012); *see also Kristina B. v. Edward B.*, 329 P.3d 202, 208 (Alaska 2014) (noting that the offending parent "must show that it is in the child's best interests that the parent have custody" with reference to the outlined options in the statute: "the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child" (second quotation quoting AS 25.24.150(h)) (internal quotation marks omitted)).

superior court satisfactorily addressed whether "the best interests of the child[ren] require [Theodore's] participation as a custodial parent . . . because of other circumstances."[11]

Caroline argues that she needed to be "unavailable to parent the children" for the presumption against joint custody to be overcome, but she misunderstands this statutory provision. The structure of subsection .150(g) provides alternative grounds for assessing whether the best interests of the children require the custodial participation of the perpetrating parent.[12]   Subsection [3][b] allows the presumption to be rebutted regardless of the availability of the other parent, so long as it is in the best interest of the children that the perpetrating parent exercise some degree of custody.[13]

Here Caroline's conduct in interfering with the children's reunification counseling and their relationship with their father was central to the superior court's decision.  The court found that Caroline had "put any number of obstacles between [Theodore] and his children to undermine his ability to reestablish a relationship," and that she had engaged in parental alienation.  These are sufficient "other circumstances" under [3][b] to establish that it was in the best interest of the children to have their father in their lives.  Thus, the superior court did not clearly err when it found that Theodore rebutted the presumption against shared physical or legal custody.

B.     **The Superior Court Did Not Abuse Its Discretion When It Considered Caroline's Conduct As It Related To The Children's Best Interests.**

Caroline argues that the superior court incorrectly considered her reluctance to engage in reunification therapy.  She relies upon AS 25.24.150(k), which states, "The fact that an abused parent suffers from the effects of the abuse does not constitute a basis

---

[11]     AS 25.24.150(h).

[12]     *See* AS 25.24.150(g).

[13]     *Id.*

for denying custody to the abused parent unless the court finds that the effects of the domestic violence are so severe that . . . the parent [is] unable to safely parent the child."

Alaska Statute 25.24.150(k) exists to protect victims of domestic violence who may suffer lasting psychological or physical effects from domestic violence. We have only interpreted this provision once, in *Kristina B. v. Edward B.*[14] There, the father was found to have a history of domestic violence, but the court awarded him sole physical custody.[15] The court concluded that the father had rebutted the presumption, in part because the mother's substance abuse prevented her from effectively parenting the child.[16] The mother appealed, arguing that under AS 25.24.150(k) it was inappropriate for the court to consider her history of substance abuse because it was due to, or had been exacerbated by, the domestic violence.[17] We disagreed, holding that the mother had failed to demonstrate that the substance abuse was related to the domestic violence because she had been abusing substances long before the relationship began.[18]

Although we are mindful of the struggles faced by victims of domestic violence, in this case Caroline failed to make the necessary showing that domestic violence caused her to interfere with the children's reunification counseling and to engage in parental alienation conduct. She did not raise her AS 25.24.150(k) argument before the superior court or ask the court for any findings that her conduct was due to the effects of domestic violence. Instead, in the superior court Caroline blamed the missed

---

[14]     *Kristina B.*, 329 P.3d at 210.

[15]     *Id.* at 204.

[16]     *Id.* at 210.

[17]     *Id.*

[18]     *Id.*

appointments on the children's and her schedules and the children's reluctance to go to counseling. She did not argue that she was afraid of Theodore or that her fear caused her to act the way she did. In fact, the court specifically found that she indicated a desire to have Theodore in the children's lives. Thus, the superior court did not abuse its discretion when it considered Caroline's parental alienation conduct.

### C. The Superior Court Did Not Abuse Its Discretion When Considering The Best Interests Of The Children.

Caroline argues that the superior court abused its discretion because it failed to consider all of the statutory best interest factors when making its custody decision. Specifically, she argues that the superior court abused its discretion because it failed to consider the children's preferences, the love and affection existing between the children and the parents, and the length of time the children had lived in a stable environment.

Alaska Statute 25.24.150(c) sets out "nine *potentially relevant* factors that the court must consider" when determining the best interests of the child.[19] These factors include:

> [1] the needs of the child; [2] each parent's ability and desire to meet those needs; [3] the child's preference, if he or she is old enough to have one; [4] the love and affection between the child and each parent; [5] the stability and continuity of the child's environment; [6] the willingness of each parent to facilitate the child's relationship with the other parent; [7] any domestic violence or child abuse; [8] any substance abuse that directly affects the child; and [9] other factors that the court deems pertinent.[20]

---

[19] *Park v. Park*, 986 P.2d 205, 206 (Alaska 1999) (emphasis added).

[20] *Rosenblum v. Perales*, 303 P.3d 500, 504 n.11 (Alaska 2013) (citing AS 25.24.150(c)).

We have held that the superior court need not mention each factor by name; it is sufficient if the court's findings provide "a clear indication of the factors [that the court] considered important in exercising its discretion or allows us to glean from the record what considerations were involved."[21] And the statute is a list of potential factors; the court "must only address those that are 'actually relevant in light of the evidence presented.' "[22]

Caroline's arguments are unpersuasive. The superior court did not abuse its discretion in not discussing the children's preferences. At the time of trial the children were 10, 9, and 7 years of age. Given their ages, they were not of sufficient maturity to have a meaningful preference.[23]

The court did not make any findings regarding the love and affection between the children and the parents. We take this to mean that either the court did not find this factor particularly relevant or that the factor was equally balanced between the parents.[24]

The court also did not make a finding on the stability factor. During trial the testimony centered on two issues: Theodore's history of domestic violence and

---

[21]     *Id.* at 504 (alteration in original) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 648 (Alaska 2005)) (internal quotation marks omitted).

[22]     *Thomas v. Thomas*, 171 P.3d 98, 102 (Alaska 2007) (quoting *Virgin v. Virgin*, 990 P.2d 1040, 1045 (Alaska 1999)).

[23]     *Compare Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (giving weight to the preference of a 14 year old where no evidence suggested that either parent pressured the child), *with William P. v. Taunya P.*, 258 P.3d 812, 816 (Alaska 2011) (agreeing that children aged 10 and 11 were too young to form preferences).

[24]     The court "must only address those [factors] that are actually relevant in light of the evidence presented." *Thomas*, 171 P.3d at 102 (quoting *Virgin*, 990 P.2d at 1045) (internal quotation marks omitted).

Caroline's willful attempts to damage the relationship between Theodore and the children. A trial court "must only address those [factors] that are actually relevant in light of the evidence presented."[25] The court did find that Caroline alienated the children, and this finding is not clearly erroneous. The record is replete with evidence supporting this finding, including Lytle's testimony that Caroline was interfering with counseling, Thomas's overly sophisticated questions, and Caroline's own admissions. It is also clear that alienation was the most significant factor in the court's decision, and it was not an abuse of discretion for the court to place great weight upon this finding.

The superior court did not abuse its discretion by not making findings on the children's preferences, the love and affection between the children and the parents, and the length of time the children had lived in a stable environment.

## V.  CONCLUSION

We AFFIRM the decision of the superior court in all respects.

---

[25]     *Id.* (quoting *Virgin*, 990 P.2d at 1045) (internal quotation marks omitted).