*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JILL Y., | ) | |
| | ) | Supreme Court No. S-17071 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-17-01404 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CASEY Y., | ) | |
| Appellee. | ) | No. 7451 – May 15, 2020 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Bethany Harbison, Judge.

Appearances: Jill Y., pro se, Denver, Colorado, Appellant. No appearance by Appellee Casey Y.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

CARNEY, Justice.

## I.   INTRODUCTION

At the end of a marriage marked by allegations of domestic violence and substance abuse, a couple sought protective orders as well as a divorce and custody decision regarding their young daughter. After a series of hearings over six months the superior court granted a decree of divorce and issued its custody, visitation, and support order. The mother appeals two aspects of the court's order: the court's findings that she did not prove allegations that her ex-husband sexually assaulted her on two occasions

and the court's restriction of her use and possession of alcohol and controlled substances while she has custody of the child. Because we conclude that the superior court did not clearly err by finding that the mother had not proven by a preponderance of the evidence that the alleged sexual assaults occurred, we affirm that decision. We also conclude that the superior court did not abuse its discretion by restricting the mother's use of alcohol and controlled substances, and affirm the superior court's custody decision.

## II.    FACTS AND PROCEEDINGS

### A.    Interim Custody, Visitation, And Child Support Order

Jill Y. and Casey Y. married in February 2012; their daughter was born the following February.[1] They separated in late 2016 or early 2017.

In February 2017 Casey petitioned for a domestic violence protective order against Jill, alleging that she "kidnap[ped]" their daughter in violation of an informal parenting agreement they had reached after their separation. The petition alleged that Jill had held him at gunpoint on a different occasion. Casey also requested an order prohibiting Jill from possessing or using controlled substances. The superior court granted Casey a short-term ex parte protective order against Jill, as well as a writ of assistance for law enforcement to help Casey regain custody of their daughter. A hearing on his request for a long-term order was scheduled for later that month.

Two days later Casey filed for divorce, alleging in the complaint that Jill had a history of domestic violence and "instability." He requested primary physical and sole legal custody of their daughter.

After Casey filed the divorce complaint Jill petitioned for a domestic violence protective order against him. In the petition she alleged that Casey had been

---

[1]    We use initials in lieu of the parties' last names to protect the family's privacy.

physically abusive and that he had raped her on two occasions, once in November 2013 and again in December 2016. Jill also alleged that Casey, who was on probation following his conviction for driving under the influence, continued to use alcohol in violation of his probation conditions. She requested an order prohibiting Casey from using or possessing controlled substances or alcohol around their daughter.

Jill answered the divorce complaint and filed a counterclaim in March. She again alleged that Casey had assaulted her both physically and sexually during their marriage and claimed that Casey "struggled throughout their relationship with substance abuse." She requested that the court award her, rather than Casey, primary physical and sole legal custody of their daughter. Jill also filed an unopposed motion to consolidate the divorce with the petitions for domestic violence that each had filed against the other. The court granted the motion and consolidated the cases.

In April Jill moved for interim child custody, visitation, and support, asking the court to modify the conditions of the protective order that had been granted against her. In addition to repeating her allegations about Casey's domestic violence and substance abuse, Jill asked the court to order hair follicle testing to determine whether Casey was using drugs and to require him to complete a batterers' intervention program.

Casey opposed the motion, denying Jill's allegations and claiming that Jill had a history of physically attacking, emotionally abusing, and bullying him, including pointing a loaded gun at him. Casey argued that Jill's sexual assault allegations were not credible because she reported the November 2013 incident only after she had been arrested for domestic violence. He also asserted that the December 2016 incident was consensual.

The court convened a hearing over several days in May to determine interim custody. Casey and Jill each testified and also presented witnesses. Much of the

testimony focused on the competing allegations of substance abuse and domestic violence that occurred during their relationship.

Casey's first witness was the state trooper who responded to the scene in November 2013. The trooper testified that he listened to an audio recording that Casey had made during the incident that evening and that it "seemed to be consistent with [Casey's] statements about the event[s]." The trooper stated that he viewed and photographed Casey's injuries and then spoke to the trooper who had interviewed Jill. After speaking with the other trooper, he determined that Jill was "the primary physical aggressor" and arrested her.

Casey's mother also testified about the same evening. She stated that Casey had telephoned her, saying that he "thought something bad was going to happen." When she arrived Jill was not wearing a shirt and refused to put on a coat. Casey's mother testified that she "would have preferred to leave with the baby" instead of leaving the baby in that situation. Later that night Casey's mother went back to get the child from the troopers.

Casey then testified. He first described an incident in the summer of 2010 when Jill became angry after "a couple glasses of wine or champagne" and slapped him in the face. Casey also described the November 2013 incident. He stated that Jill had learned he had an extramarital affair, and after they had consensual sex Jill became increasingly agitated about his affair. Casey said that Jill began drinking heavily and threatened to kill herself, first by jumping off the second floor, then by cutting her wrists, and then by drinking Everclear.[2] He said that when he took the bottle she attacked and

---

[2] Everclear is the brand name of an alcoholic beverage that is available in varieties ranging from 120 proof (60% alcohol) to 190 proof (95% alcohol) by volume.

scratched him. He said that he was holding their daughter while trying to calm Jill when Jill struck him in the testicles.

Casey testified that Jill tried to hit him with her laptop, and when he took it from her she attacked him. In the scuffle the computer fell from their second-floor loft and broke. He stated that both he and Jill fell against the upstairs railing, which broke, when she attempted to punch or grab him. Casey testified that he had recorded much of the incident on his phone and played the recording for the trooper that evening. He also testified that the photographs the trooper had taken of scratches on his neck, right forearm, and right bicep, as well as the broken computer and damaged upstairs railings, accurately showed his injuries and damaged property. The photographs were admitted into evidence during his testimony.

Casey described what happened in December 2016 when Jill alleged he had sexually assaulted her. He testified that he and Jill had been sleeping in different bedrooms at that point in their relationship. He stated that unlike other nights when they "had slept together in the same bed without having sex," that night they were "close and intimate" and had consensual sex.

Casey also testified about Jill's alcohol abuse. He said that in addition to the November 2013 incident when she was arrested, Jill had a history of abusing alcohol. He recalled one occasion when Jill "attempt[ed] to drive while grievously intoxicated" and another occasion when he had to "pull Jill out of a ditch that she had fallen into while intoxicated."

Jill's mother testified after Casey. She described Casey as not "engaged" with his daughter when she was an infant, and as "very abrupt in his discipline." She recalled that when Jill and Casey visited her in Colorado, Casey "very often would have a drink in his hand." She stated she had seen "a few arguments" between Casey and Jill

and that on one occasion she had seen Casey block the door, preventing Jill from leaving their bedroom.

Jill's mother testified that Jill had called her on the evening of the November 2013 incident. She recalled hearing yelling in the background and called the police asking them to go to the house.

Jill testified after her mother. She stated that before the November 2013 incident, she and Casey took a shower together after he agreed he would not touch her. She said that she told him she "wasn't comfortable" when he began to touch her, but that Casey "turned [her] around" and "had sex with [her]."

Jill said that later in the evening when she attempted to discuss Casey's affair, he gave her alcohol and "the discussion quickly turned into an argument." Jill testified that she bit him when he tried to keep her from leaving her seat and he slapped her. She testified that after she made a Facebook post about his affair, Casey grabbed the computer and threw it "from the second story" of the house.

Jill said that before he started recording what happened, Casey told her that she "should kill [her]self." She said that she then "got out a knife" but "realized [she] didn't know which way to cut to kill [her]self," so she "tried to drink Everclear" as "[a]nother possible way to kill [her]self." Jill then stated that when Casey "ripped the bottle away" she began screaming and later scratched him. She testified that she tried to go upstairs but Casey blocked the way. Jill testified that in response she "tried to punch him in the [testicles]" to get him to move. Jill said once they were upstairs Casey picked up their daughter, and when Jill tried to go back downstairs, Casey blocked the way and she again "tried to hit him in the [testicles] to get him to move." Jill testified that he then shoved her back into the upstairs railing.

Jill testified that the December 2016 incident started when Casey asked if she would "like to sleep in . . . what had been our bed one last time." Jill said she agreed

"as long as it didn't lead to any physical intimacy." She stated that once they were in bed together Casey "started touching [her], kissing [her] neck, [and] touching [her] breasts." Jill testified that she repeatedly told him to stop but that he continued and eventually had sexual intercourse with her.

In early June the court issued an interim custody, visitation, and child support order. It awarded interim primary physical custody of their daughter to Casey until July 1, and then to Jill until the conclusion of trial. The court also ordered both parents to obtain substance abuse and mental health assessments by July 1, and to comply with any recommendations from them; to obtain a behavioral risk assessment to address domestic violence concerns; to attend a parenting class; and to file proof of completion of these requirements before trial.

B. **Custody Trial**

The custody trial was held over two days in late September. Both Casey and Jill again testified. Jill also called an expert in domestic violence and its effect on children to testify regarding her assessment of Jill and Casey's relationship.

Both Casey and Jill obtained substance abuse assessments before trial. Casey also completed a mental health assessment; Jill did not complete her mental health assessment until after trial. She filed it with the court before the court issued its final order in March. Casey was questioned about the information contained in both of his assessments; Jill was questioned only about her substance abuse assessment.

When asked about her alcohol consumption during her marriage, Jill described it as "varied" but estimated that she drank "twice a week," and drank "one to three alcohol beverages each of those times." She testified that her alcohol consumption "definitely increased during the relationship" with Casey. And she admitted that she had attempted suicide by drinking Everclear in November 2013.

On cross-examination Jill was questioned about her suicide attempts. She admitted that she had not mentioned them in her substance abuse assessment — testifying that "I don't believe it came up" — and acknowledged that she had attempted suicide on two separate occasions. On the first occasion she pointed a gun at her head following an argument with Casey. The second time was in November 2013, when she attempted to kill herself by drinking Everclear. Jill acknowledged that even though she had not discussed her suicide attempts with the assessor, "the diagnoses were alcohol use, cannabis use mild, [and] problems related to other legal circumstances." She also acknowledged that the assessor recommended that she complete an education program about the effects of substances.

When the court asked Jill whether she believed that "continuing to drink moderately is in [their daughter's] best interest," Jill responded that it was in her daughter's "best interest to witness healthy attitudes and behaviors towards substances." Jill blamed her own unhealthy drinking on her lack of exposure to "healthy[,] moderate" alcohol consumption as a child and teenager, and told the court that she wanted her daughter to avoid a similar problem by seeing adults demonstrate a "healthy attitude and approach" toward alcohol.

Jill testified that Casey would often "psychologically abuse and manipulate [her]." And she said that Casey behaved in ways that endangered their daughter, including drinking in violation of his probation and not using a car seat for their daughter, after he learned that Jill had an affair. Jill acknowledged that her assessment indicated that she "denied [that] her substance use affect[ed] her family." She testified that she did not believe she had said that to the assessor, but believed that the assessor probably obtained the information from the troopers' reports about the November 2013 incident. When she was asked by her attorney whether she now believed that substance

abuse affected her family, Jill acknowledged that it had, "particularly [on] the night of [the November 2013 incident]."

Jill's expert testified after Jill about her evaluation of Jill and Casey's relationship. She believed that Casey engaged in "coercive or abusive behaviors" throughout the relationship. Based on Jill's answers to evaluation questions, the expert concluded that Jill "needs to work with an advocate on following safety measures [and] having a safety plan" to mitigate the risks of domestic violence. The expert also testified that, in her opinion, the violent incident in November 2013 "occurred because of [Casey's] own actions" and that the "escalation seem[ed] to be directed by [Casey]."

Casey testified last and admitted it was "very clear that substance[s], especially alcohol, ha[d] problematized [sic] a lot of our dynamics." When questioned about his substance abuse assessment Casey stated he had revealed his history of alcohol use to the assessor, including drinking as a minor and being arrested and charged with driving under the influence after hitting a parked police car. Although Casey's assessment concluded that he did not meet the criteria for a substance use disorder, it noted that he "potentially provid[ed] answers [so as] to be seen in a favorable manner and [that] more information [is required] to determine actual substance use disorder."

Casey also revealed his history of alcohol use to his mental health assessor, who concluded that "he and/or his wife engaged in problematic behaviors when alcohol was part of the picture." The report also noted that "[i]t was concerning that he continued to drink alcohol while he was on probation, given the risks of revocation and how a possible conviction . . . may have affected his legal situation and his employment."

Jill submitted her mental health assessment to the court nearly six months after trial. Based upon the information she had provided, the assessment concluded that "Jill is at low risk for a recurrence of domestic violence" and that there was "no evidence of substance abuse proneness."

The superior court issued its custody, visitation, and support order in late March 2018. The court found that both parents had a history of perpetrating domestic violence. As a result the court recognized that it "must award sole legal and primary physical custody to the parent who is less likely to continue to perpetrate the violence." It therefore awarded Jill sole legal and primary physical custody of their daughter. The court awarded Casey visitation but required him to complete a batterers' intervention program as well as substance abuse treatment and demonstrate that he was no longer abusing alcohol before he could have unsupervised visits.

The court addressed each domestic violence allegation individually. The court found that each parent had proven some, but not all, of the allegations against the other, and it granted each a long-term protective order. The court specifically found that "[e]ach party poses a risk of harm to the other, and [their daughter] is at risk of violence if her parents continue to consume alcohol."

The court did not find, however, that Jill had proven either of the sexual assault allegations she had made against Casey. With regard to each incident the court noted that "Jill would have to establish that she did not consent to the sexual contact, that Casey was aware that she was not consenting to the sexual contact, and that he recklessly disregarded her lack of consent." The court concluded that "Jill has not proved by a preponderance of the evidence that Casey committed" either sexual assault allegation.

The court then considered each of the statutory factors in AS 25.24.150(c) to determine the custody arrangement that would be in their daughter's best interests.[3]

---

[3]    Alaska Statute 25.24.150(c) requires a court making a best interests determination to consider:

> (1) the physical, emotional, mental, religious, and social
> needs of the child;

(continued...)

It focused on the parents' ability and desire to meet their daughter's needs,[4] their daughter's need for stability,[5] and the parents' history of substance abuse and its effect upon their daughter.[6]

Turning first to the parents' ability to meet their child's needs, the court found that both "struggle" to meet her "emotional needs." The court pointed out that both had "exposed her to domestic violence, parental substance abuse, parental incarceration, and parental separation." It went on to note that "[n]either parent fully

---

[3]      (...continued)
(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child . . . ;

(7) any evidence of domestic violence, child abuse, or child neglect . . . ;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child; [and]

(9) other factors that the court considers pertinent.

[4]      *See* AS 25.24.150(c)(1), (2).

[5]      *See* AS 25.24.150(c)(5).

[6]      *See* AS 25.24.150(c)(8).

accepts and understands that their continued use of substances exposes [her] to further harm" but that Jill had proven herself "better able to accept guidance" about changing her conduct.

After noting that as a result of their divorce Casey and Jill were planning to live in different communities, the court found that their daughter's need to maintain regular contact and "a solid relationship" with each parent was "paramount." To that end it found that it was "very important" for their daughter to "reside primarily with the parent who will best protect her from future domestic violence, substance abuse, and chaos."

Turning to evidence of the parents' substance abuse, the court found that "[b]oth parents' substance abuse has directly affected [their daughter's] emotional well-being." It found that both parents' substance abuse exacerbated the domestic violence between them, that it "has resulted in each of them being incarcerated or at risk of incarceration," and that it has "resulted in significantly decreased stability for [their daughter]."

The court ordered both parents to complete treatment plans which mirrored the requirements in the interim custody order. Then, after setting out the details of the parents' treatment plans, the court addressed several conditions for their conduct. With regard to their substance abuse the court ordered that "[n]either parent may possess or consume alcohol, marijuana, or unprescribed controlled substances in the parent's home while [their daughter] is in the home." In addition the court ordered that neither parent could possess or consume those substances "outside of the parent's home unless [the child] is in the care of another adult . . . who understands that he/she may not consume alcohol, marijuana, or unprescribed controlled substances while [she] is in his/her care."

Jill appeals the court's finding that she had not proved that Casey sexually assaulted her and its restriction of her ability to possess or consume alcohol.

## III. STANDARD OF REVIEW

"The trial court has broad discretion in child custody decisions."[7] We will not reverse the superior court's custody determination unless "the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[8] The superior court abuses its discretion if it "consider[s] improper factors in making its custody determination, fail[s] to consider statutorily mandated factors, or assign[s] disproportionate weight to particular factors while ignoring others."[9] "A finding of fact is clearly erroneous only when a review of the entire record leaves us with a definite and firm conviction that the trial court has made a mistake."[10] "Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[11]

---

[7] *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1089 (Alaska 2015) (quoting *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005)).

[8] *Id.* at 1089-90 (quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996)).

[9] *Id.* at 1090 (quoting *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998)).

[10] *Stephanie W. v. Maxwell V.*, 319 P.3d 219, 225 (Alaska 2014) (quoting *Evans v. Evans*, 869 P.2d 478, 479 (Alaska 1994)).

[11] *Caroline J.*, 354 P.3d at 1090 (quoting *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014)).

## IV.   DISCUSSION

### A.   The Superior Court Did Not Err By Finding That Jill Had Not Proven By A Preponderance Of The Evidence That Certain Alleged Sexual Assaults Occurred.

Although the court found that Casey was more likely than Jill to continue to perpetrate domestic violence and therefore awarded Jill primary physical and sole legal custody, Jill argues that the court erred by finding she had not established her two sexual assault allegations. She contends that the court "fail[ed] to consider [the] use of force and coercion as evidence supporting a claim of non-consent." She also argues that the court erroneously failed to address the parties' credibility with regard to the sexual assault allegations, though elsewhere it found Casey's testimony not credible.

It was Jill's burden to prove by a preponderance of the evidence that the incidents she alleged had occurred and that Casey's conduct amounted to sexual assault.[12] The court stated that she would have had to "establish that she did not consent to the sexual contact, that Casey was aware that she was not consenting to the sexual contact, and that he recklessly disregarded her lack of consent." Jill's allegations that Casey had forced her to have intercourse against her will would amount to first-degree sexual assault if proven.[13]

---

[12]   *See McCavit v. Lacher*, 447 P.3d 726, 731 (Alaska 2019) ("Preponderance of the evidence is the general burden of persuasion in civil cases." (quoting *Fernandes v. Portwine*, 56 P.3d 1, 5 (Alaska 2002))).

[13]   *See* AS 11.41.410(a)(1). The allegations could also constitute second-degree sexual assault if there was "sexual contact" rather than "sexual penetration." *See* AS 11.41.420(a)(1).

First-degree sexual assault, as relevant to Jill's allegations, is defined as "engag[ing] in sexual penetration with another person without consent of that person."[14] Proof of such an assault requires a showing that the offender acted "in reckless disregard of the circumstances that the sexual contact is 'without consent.' "[15] "Without consent" means "with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of death, imminent physical injury, or kidnapping to be inflicted on anyone" or the victim is "incapacitated as a result of an act of the" perpetrator.[16] Jill therefore needed to prove each element of sexual assault by a preponderance of the evidence to persuade the court that Casey had committed such offenses. The superior court specifically listed the elements of the offense, and it then concluded that Jill had not proved by a preponderance of the evidence that Casey committed sexual assault on either occasion.

Jill argues that "her consistent testimony" alone is enough to establish that she did not consent to sex in the shower in 2013, that Casey knew she did not consent, and that Casey recklessly disregarded her lack of consent. Jill argues that her expert witness's testimony supports her and explains why she might have appeared to consent although she did not.

---

[14]     AS 11.41.410(a)(1).

[15]     *State v. Mayfield*, 442 P.3d 794, 798 & n.8 (Alaska App. 2019) (citing *Reynolds v. State*, 664 P.2d 621, 624-25 (Alaska App. 1983)); *see also Reynolds*, 664 P.2d at 624-26 (quoting AS 11.41.470(3)(A)) (holding that legislature's elimination of common law requirement of resistance in sexual assault statute warranted additional mens rea requirement to mitigate risk of conviction despite defendant's honest, reasonable belief that victim gave consent).

[16]     AS 11.41.470(8).

But Jill disregards both the contrary evidence before the court and that it is the trial court's province, not this court's, to make credibility determinations.[17] "We accord the superior court's factual findings 'particular deference ... when they are based primarily on oral testimony.' "[18] "This is so because, unlike the reviewing court, the trier of fact saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions."[19]

Casey's testimony directly contradicts Jill's, describing both incidents as consensual. And his suggestion that Jill's description of the earlier incident was not credible because she reported it only after she was arrested for domestic violence finds support from the testimony of the trooper who arrested her. The court was entitled, and obligated, to consider the trooper's decision to arrest Jill when it determined whether Jill had proven that Casey assaulted her.[20] And while Jill's expert's testimony lends some support to her allegation that Casey had been "coercive" throughout their relationship, the expert based her opinion on information Jill provided. Unlike the trooper, she did not witness any interaction between Jill and Casey.

Jill also argues that because a portion of Casey's testimony was deemed not credible, the superior court should have disregarded his testimony in these areas as well.

---

[17] *See Regina C. v. Michael C.*, 440 P.3d 199, 207 (Alaska 2019).

[18] *Collins v. Hall*, 453 P.3d 178, 186 (Alaska 2019) (second alteration in original) (quoting *Safar v. Wells Fargo Bank, N.A.*, 254 P.3d 1112, 1117 (Alaska 2011)); *see also Dara S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 426 P.3d 975, 983 (Alaska 2018) ("It 'is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.' " (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001))).

[19] *Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980) (citing *B.B. & S. Constr. Co. v. Stone*, 535 P.2d 271, 274 n.4 (Alaska 1975)).

[20] *See id.*

But the court's determination that a portion of Casey's testimony was not credible does not require it to disregard all of his testimony.[21] After considering the descriptions provided by Jill and Casey and the additional evidence that tended to support each version, the court determined that Jill had not proven that Casey had sexually assaulted her.

Jill correctly asserts that the history of her and Casey's relationship is relevant to determine whether she consented to sexual activity, whether he knew of her lack of consent, whether he recklessly disregarded it, and whether he threatened or coerced her into sex. And the court considered that history, along with both parties' testimony, witnesses, and other evidence when it found that each had committed domestic violence against the other. But it was Jill's burden to prove by a preponderance of the evidence that she was coerced — whether by Casey's history of abuse or any other means — to participate against her will in the two alleged sexual assaults.[22]

As discussed, it is the responsibility of the trial court, not this court, to "judge[] the credibility of witnesses and weigh[] conflicting evidence."[23] And we accord the trial court's factual findings "particular deference when they are based 'primarily on oral testimony.' "[24] The superior court did not clearly err by finding, based upon the

---

[21] *See Gold Dust Mines, Inc. v. Little Squaw Gold Min. Co.*, 299 P.3d 148, 167 (Alaska 2012) (holding that "[t]he superior court may overlook inconsistencies and contradictions in testimony where the weight of the evidence counsels the court to do so").

[22] *See* AS 11.41.470(8) (defining "without consent" for purposes of sexual assault).

[23] *Regina C. v. Michael C.*, 440 P.3d 199, 207 (Alaska 2019) (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[24] *Id.* (quoting *Limeres*, 320 P.3d at 296).

credibility of witness testimony, that Jill had failed to prove by a preponderance of the evidence that Casey had committed sexual assault.

**B.** **The Superior Court Did Not Abuse Its Discretion By Restricting Jill's Use Of Alcohol And Other Substances.**

Jill argues that the superior court abused its discretion by barring her from possessing or consuming alcohol, marijuana, or unprescribed controlled substances when she has custody of her daughter. Jill contends that three of the court's findings were erroneous, that the court gave too much weight to certain statutory factors while ignoring others, and that consequently the court abused its discretion.

**1.** **The challenged factual findings are not clearly erroneous.**

Jill argues that the court did not adequately explain three specific factual findings and that the record does not support them: (1) that "[e]ach parent poses a risk of harm to the other, and [their daughter] is at risk of violence if her parents continue to consume alcohol"; (2) that "[n]either parent fully accepts and understands that their continued use of substances exposes [their daughter] to further harm"; and (3) that "[b]oth parents' substance abuse has directly affected [their daughter's] emotional well-being" by exacerbating the domestic violence and as a result each parent "[has been] incarcerated or at risk of incarceration."

**a.** **Alcohol use and risk of violence to the child**

Jill first argues that the record does not substantiate any connection between her use of alcohol and a risk of violence to their daughter because the court did not mention alcohol in any of its findings regarding specific alleged incidents of domestic violence. But Jill overlooks evidence presented to the court, including the alcohol-fueled dispute that occurred in November 2013. Jill herself testified that she bit and scratched Casey and hit him in the testicles. She also testified that she grabbed a kitchen knife to kill herself but ultimately decided instead to drink Everclear to commit suicide. Their

daughter was at home and nearby during each of these events. Jill admitted at trial that when she hit Casey in the testicles, he was holding their daughter, and that Casey was holding the child when he pushed Jill against the railing. Evidence from the trooper and Casey also supports the superior court's finding of a connection between Jill's alcohol consumption and domestic abuse.

Because the evidence, including Jill's testimony, supports the court's findings, the superior court did not clearly err when it found that "[e]ach parent poses a risk of harm to the other, and [their daughter] is at risk of violence if her parents continue to consume alcohol."

### b. Acceptance and understanding of continuing risk of harm

Jill next challenges the court's finding that neither parent accepted or understood that continued substance use could expose their daughter to harm. She points to the lack of any specific written finding that Jill abuses alcohol or other substances, even though the court made such findings about Casey. She argues that restricting her use of alcohol or other substances "in the absence of findings that [she] has an ongoing substance abuse problem that directly affects [her daughter's] well-being" is not supported by the record.

Jill again overlooks the evidence presented and the court's finding that both parents' "substance abuse has directly affected [their daughter's] emotional well-being." The court determined that "[t]he domestic violence between them has been exacerbated by substance abuse" and that "their substance abuse has resulted in each of them being incarcerated or at risk of incarceration." In addition to the evidence that supports the court's finding that each parent's consumption of alcohol or drugs poses a risk to their daughter, Jill's own testimony acknowledged that substance abuse had affected her family and that her substance abuse assessment had concluded that she had a problem with both alcohol and cannabis despite her failure to reveal her alcohol-related suicide

attempts. And while the mental health assessment she provided after the end of trial concluded that she was unlikely to have a substance use disorder, it too lacked any information about her alcohol-related suicide attempts.

In addition, Jill's answer to the court's direct question of whether she believed continuing to drink would be in her daughter's best interest supports the court's finding that she neither fully accepted nor understood the risk it posed. Rather than directly answering the court, Jill blamed her parents, in addition to Casey, for her own struggles with alcohol.

The evidence, including Jill's testimony, supports the court's finding that she does not "accept[] [or] understand[] that [her] continued use of substances exposes [her daughter] to further harm." The superior court did not clearly err in making this finding.

### c. Parents' substance abuse exacerbated domestic violence and led to incarceration

Jill's argument that the court clearly erred by finding that her substance abuse exacerbated domestic violence and led to incarceration similarly is without merit. The November 2013 incident in which she alleged Casey sexually assaulted her included an alcohol-fueled altercation that led to her arrest. Several of the parents' domestic violence allegations against each other, many of which the court found had occurred, involved alcohol, including Jill's arrest in November 2013, and Casey's DUI arrest and his continuing violation of probation conditions, which could lead to his arrest and incarceration.

Evidence presented to the court supports its finding that Jill's substance use, as well as Casey's, has affected their daughter by exacerbating the domestic violence she has been exposed to and leading to both parents' incarceration. There is no clear error in this finding.

## 2. The superior court did not fail to consider and did not disproportionately weigh certain statutory factors.

Jill argues that the trial court erred by failing to consider AS 25.24.150(k),[25] AS 25.24.150(c)(6),[26] and AS 25.24.150(c)(7)[27] in reaching its decision. Jill also contends that the court inappropriately weighed certain factors relating to her use of substances and the domestic violence between her and Casey. She argues that the court gave too much weight to Casey's allegations about her substance use and as a result overestimated their daughter's exposure to parental substance abuse, and that it discounted her position that her substance abuse was a result of domestic abuse and would not likely recur or pose a risk to their daughter in the future.

Not only does Jill's argument again overlook the evidence, including her own testimony, supporting the court's findings about her substance abuse and its impact on her daughter, but Jill also seems to overlook that the court did not deny custody to her. The court granted sole legal and primary physical custody to Jill after specifically considering the "willingness and ability of each parent to facilitate and encourage a close

---

[25] *See* AS 25.24.150(k) (abused parent suffering from effects of abuse does not constitute basis for denying custody unless court finds effects of domestic violence so severe they render abused parent unable to safely parent the child).

[26] *See* AS 25.24.150(c)(6) (court must consider each parent's willingness to facilitate child's relationship with other parent unless "one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuous relationship with the other parent will endanger the health or safety of either the parent or the child").

[27] *See* AS 25.24.150(c)(7) (court must consider "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents").

and continuing relationship between the other parent and the child"[28] and devoting two trial days to testimony relating to domestic violence between Jill and Casey. The court not only appropriately considered and weighed the statutory factors most relevant to its custody determination,[29] it awarded custody to Jill based upon its consideration. The superior court did not abuse its discretion when making its custody determination.

## V. CONCLUSION

Because the superior court did not abuse its discretion by prohibiting both parents and any caregiver from using alcohol or other substances while they have custody of the child, and because the court did not clearly err by finding that Jill had not proven her sexual assault allegations, we AFFIRM the superior court's custody order.

---

[28] *See* AS 25.24.150(c)(6).

[29] *See, e.g.*, *Ronny M. v. Nanette H.*, 303 P.3d 392, 401-02 (Alaska 2013) (holding superior court "need not make express findings on all statutory factors" set forth in AS 25.24.150(c) (quoting *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1158 (Alaska 2008))); *see also Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137-38 (Alaska 1997) (affirming custody decision where superior court "did not expressly cite AS 25.24.150(c) . . . [but] addressed the statutory factors that were, in context of the record in [the] case, pertinent and potentially determinative"); *Sweeney v. Organ*, 371 P.3d 609, 612 (Alaska 2016) (noting "superior court need not mention each factor by name," but findings must "provide 'a clear indication of the factors [that the court] considered important in exercising its discretion or allow us to glean from the record what considerations were involved' ") (alteration in original) (quoting *Rosenblum v. Perales*, 303 P.3d 500, 504 (Alaska 2013))).