NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| HEATHER R., | ) |
| | ) Supreme Court No. S-17516 |
| Appellant, | ) |
| | ) Superior Court No. 4FA-17–01970 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| JUSTIN L., | ) AND JUDGMENT[*] |
| | ) |
| Appellee. | ) No. 1845 – September 8, 2021 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Mila A. Neubert, Neubert Law Office, LLC, Fairbanks, for Appellant. Kristin J. Farleigh, Gazewood & Weiner, P.C., Fairbanks, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.    INTRODUCTION

A woman appeals the superior court's custody order awarding her ex-husband shared physical and legal custody of their child. She argues that the court erred when it found that her ex-husband had not committed two specific incidents of domestic violence and failed to find that he had a history of domestic violence.

---

[*]    Entered under Alaska Appellate Rule 214.

Because it was error to conclude that one of the incidents was not a crime of domestic violence, we reverse that finding and remand the matter to the superior court for further proceedings.

## II.    FACTS AND PROCEEDINGS

Heather R.[1] and Justin L. married in July 2016 and separated in April 2017. They have one child together.

Heather filed for divorce in June 2017, asking the court to award her primary physical custody and joint legal custody of the child. Justin answered, seeking joint physical custody but not opposing Heather's request for joint legal custody.

The superior court held a two-day custody hearing in December 2018. Heather's first witness was her therapist. The therapist testified that she had approximately 48 sessions with Heather since April 2016, as well as a "dozen or so" joint sessions with Heather and Justin, and at least one session with only Justin. The therapist listed topics that she had addressed with Heather, including domestic violence, sexual abuse, verbal abuse, and Justin's controlling behavior and jealousy. The therapist did not testify that Heather told her about any specific act of Justin's physical or sexual abuse, although they did discuss the problems in Heather's relationship with Justin.

Heather testified next, describing two incidents that she believed constituted acts of domestic violence while she and Justin were living together. Heather testified that Justin assaulted her in April 2015 when he "came at [her]" after she took a photo of his vehicle's license plate so she could report him to the police for drunk driving. Heather stated that she took the photo because she was angry that Justin violated their agreement not to drink alcohol around their child or at their home and because he insisted on driving himself.

---

[1]    We use initials to protect the parties' privacy.

Heather testified that when Justin saw her taking a photograph, he jumped out of his truck and chased her to try to take the phone. She said that Justin knew she had a "bad arm" and shoulder, and he "manhandl[ed]" her to try to take her phone. After "start[ing] off on the stairwell," the "scuffle" continued inside the house where Heather stated Justin pushed her onto the couch and then into a recliner before eventually taking her phone. Heather tried unsuccessfully to get the phone back. After Justin left, Heather went to the emergency room where she was diagnosed with sprains of her right shoulder, forearm, wrist, and hand.

Heather also testified that Justin sexually assaulted her in November 2016. She described Justin trying to have sex as soon as she was awakened by his alarm. She said she asked him to "just give [her] a minute" but when she returned to bed Justin again began to initiate sex even though Heather "was obviously not ready."[2] Heather testified that Justin then "grabbed lubricant" and Heather said "[o]kay" even though she "totally wasn't ready" and "[h]e was hurting [her]."

She testified that Justin "just kind of sneered at [her]" and asked, "Am I hurting you?" She stated she told him to stop "like, 10 times, 12 times" and "probably hit him 15 times" because he was hurting her. She testified she "was whimpering" and "started shaking" and "at the end . . . had to fight him off" by "hit[ting] his chest" and "trying to . . . give him a shove." Heather testified that afterward Justin told her he felt "bad" but "forced [me] to lay next to him." She said Justin ignored her pleas to stop until "he completed, he was satisfied, he was good to go."

Heather also alleged that Justin had committed many more acts of domestic violence. She testified that he "constantly . . . punch[ed] holes into the drywall"; that he

---

  [2]   Heather testified that due to early menopause she needed more time to prepare for sex in order to avoid injury to her vaginal walls.

sexually assaulted her "50 or more" times during their relationship; and that she had once called the police during an argument because Justin was belligerent and screaming. Heather testified that she decided to end their marriage because she "couldn't be in fear all the time with him anymore."

Justin agreed that a physical altercation took place in April 2015. He acknowledged that he had been drinking when he knew he should not be. He testified that because he was on probation for DUI, he knew he would be "going to jail for a year" if Heather called the police, so he got out of the truck and ran to the door of the house.

Justin testified that although Heather "almost had [the door] locked," he was able to open it because he was stronger than her. He admitted that he "grabbed her phone" and they "struggled over it" until he "took it from her" and refused to return it until she promised "not to call the cops." Justin denied pushing Heather down the stairs or into furniture or "purposefully go[ing] after her weak shoulder."

Justin's testimony also addressed the November incident. He acknowledged that he woke Heather "and tried to have sex with her" and she "wasn't really excited about it . . . [b]ut . . . she agreed to it." He testified that when they changed positions Heather "started kind of freaking out, and it freaked [me] out." Justin stated that he "didn't know what was going on" and Heather "was telling [me] to get off her" and he "did once [he] figured out," because he "was just confused."

Justin testified that after they "got done" he felt bad because Heather was obviously upset. He stated that he "tried to console her" but Heather did not want to talk to him. He conceded that he later sent Heather a text saying he "was sorry she was upset" and he was "sorry about the whole thing."

Justin acknowledged that he took "several [more] strokes" to climax but said he recognized that he "should have just stopped . . . [and] did, once [I] realized" that Heather wanted him to stop. He testified he did not mean to continue without Heather's

consent, but "[i]t just happened that way." Justin stated that he apologized to her because he "felt . . . horrible for her being upset" but that he "never raped her." He testified that he never intended to hurt Heather and he felt bad for causing her pain.

Justin also acknowledged that he had "anger issues" and that he "might have slammed a door" during counseling sessions with Heather's therapist. But he denied attacking or raping Heather.

At the conclusion of the hearing the superior court noted that there was "plenty of evidence from [Heather's] viewpoint that there's been several instances of" sexual assault and other domestic violence, as well as "a suggestion that the ongoing course of behavior by [Justin] may constitute domestic violence." The court explained that it would consider the evidence, including witnesses' credibility, to determine whether the rebuttable presumption under AS 25.24.150(g)[3] applied and whether any of the incidents Heather described amounted to acts of domestic violence as defined by AS 18.66.990(3). The court ordered the parties to file brief written closing arguments, noting it was "particularly . . . interested in . . . the instances of domestic violence that have been raised here, based on the evidence, are they, in fact, instances of domestic violence."

Heather's closing argument urged the court to find that the rebuttable presumption applied. She argued that her testimony about the April and November incidents and Justin's general pattern of behavior was more credible than Justin's testimony, and was corroborated by her therapist. As a result, she argued, the court was "require[d]" to award her primary physical and sole legal custody of their child.

---

[3]    AS 25.24.150(g) establishes "a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent . . . may not be awarded . . . joint legal custody, or joint physical custody of a child."

Justin, in turn, argued that the evidence did not prove he had committed any acts of domestic violence and that the rebuttable presumption did not apply. He first argued that the November incident did not constitute sexual assault because there was no evidence that he had acted without Heather's consent.[4] He argued that he did not use "force . . . or otherwise threaten[] death, imminent physical injury, or kidnapping."[5] He also argued that Heather was not incapacitated[6] and that his own "[c]onfusion and uncertainty" did not mean he recklessly disregarded Heather's lack of consent,[7] especially given the evidence that he stopped "as soon as he realized [Heather] was saying no." Justin also argued that "[t]he court should not give any weight to the fact that [he] apologized" saying that he had done so because he "felt badly that he didn't understand what was going on and stop sooner, not because he raped [Heather]."

Justin also argued that the April incident was not an assault because he and Heather were in a "type of mutual struggle." He claimed that the incident therefore was not an assault,[8] but only disorderly conduct,[9] which is not a crime of domestic violence.[10] Justin urged the court to find that the rebuttable presumption did not apply and to order shared physical and legal custody.

---

[4]    *See* AS 11.41.470(8) (defining "without consent").

[5]    *See* AS 11.41.470(8)(A).

[6]    *See* AS 11.41.470(8)(B).

[7]    *Reynolds v. State*, 664 P.2d 621, 625 (Alaska App. 1983) (holding that sexual assault in the first degree requires reckless disregard of victim's lack of consent).

[8]    *See* AS 11.41.200-.230 (defining assault).

[9]    *See* AS 11.61.110 (defining disorderly conduct).

[10]    *See* AS 18.66.990(3) (listing offenses that constitute crimes of domestic violence).

In late January 2019 the superior court issued its decision, concluding that neither the April nor November incident constituted an act of domestic violence. The court agreed with Justin that the April incident "was a mutual struggle" at their "shared residence." The court relied on *Dawson v. State*[11] to find that because Heather and Justin "had the mutual purpose of engaging in a struggle" the incident was disorderly conduct. Because disorderly conduct is not a crime of domestic violence, the court found that the incident was not an act of domestic violence.

Turning to the November incident the court recognized that sexual assault cases were often premised on "credibility determinations between the parties . . . [and] whether a person's testimony is consistent with other evidence and believable." The court first found that Heather's claim that Justin had "sexually assaulted [her] 50 times or more" was not credible "in [the] main or in the specific" even though it was "clear" to the court that Justin did not meet Heather's expectations that he "behave in a more gentlemanly manner regarding initiating sex."

The court therefore found that Heather had not met her burden of proof to show by a preponderance of the evidence that Justin had committed acts of domestic violence against her, and it did not apply the rebuttable presumption against Justin. The court ordered that Heather and Justin share physical and legal custody of their child.

Heather moved for reconsideration, which the court denied. Heather appeals.

---

[11]    264 P.3d 851, 854 (Alaska App. 2011).

## III. STANDARD OF REVIEW

"The [superior] court has broad discretion in child custody decisions."[12] "Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[13] "But whether the court used the proper legal standard for applying the domestic violence presumption — including whether the court's findings support applying the presumption — is a question of law, which we review de novo."[14] "A factual finding is clearly erroneous when a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake."[15]

## IV. DISCUSSION

Alaska Statute 25.24.150(g) establishes "a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent . . . may not be awarded . . . joint legal custody, or joint physical custody of a child."[16] "A parent has a history of perpetrating domestic violence . . . if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence."[17]

---

[12] *Jill Y. v. Casey Y.*, 463 P.3d 833, 839-40 (Alaska 2020) (quoting *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1089 (Alaska 2015)).

[13] *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014).

[14] *Id.*

[15] *Faye H. v. James B.*, 348 P.3d 876, 878 (Alaska 2015) (quoting *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014)).

[16] *Id.* (quoting AS 25.24.150(g)).

[17] *Id.* (emphasis removed) (quoting AS 25.24.150(h)).

Heather argues that the superior court made "factual and legal errors" that led it to erroneously conclude that the rebuttable presumption did not apply.

**A.      It Was Error To Determine That The April 2015 Incident Was Not An Act Of Domestic Violence.**

Heather challenges the superior court's conclusion that the April 2015 physical altercation was not an act of domestic violence because she and Justin engaged in mutual combat. She notes that Justin "chas[ed her]" after she took a picture of his license plate and "physically forc[ed her] into a struggle . . . and then forcibly t[ook] possession of her phone" and only returned it after she "promised she would not call the police." She argues that because she struggled only to try to prevent him from taking her phone, the court's mutual combat finding is "contrary to law, as well as factually erroneous." Justin disagrees, arguing that Heather's characterization of the incident as an "altercation . . . Justin initiated . . . . ignores the trial court's clear finding . . . . that the incident was 'a mutual struggle and not an assault.' "

There are a number of theories of disorderly conduct, including "engag[ing] in fighting other than in self-defense."[18] The superior court found that Heather and Justin "had the mutual purpose of engaging in a struggle," and therefore the incident amounted to disorderly conduct. The court, however, overlooked that disorderly conduct "does not include one-sided attacks of one person upon another" where there is "no indication that [the other person] . . . intended . . . to engage in physical combat."[19] A

---

[18]      AS 11.61.110(a)(5).

[19]      *Dawson v. State*, 264 P.3d 851, 860-61 (Alaska App. 2011).

response to such an attack qualifies as self-defense[20] and is specifically excluded from the relevant definition of disorderly conduct.[21]

No evidence before the superior court indicated that Heather shared any mutual understanding that she and Justin would engage in combat when she photographed Justin's license plate. Both parties testified that Heather moved away from Justin after she took the photograph. And Justin testified that he initiated the struggle by leaving his vehicle, "r[unning] back inside," preventing Heather from shutting and locking the door, and then "grabb[ing] her phone," leading to a "struggle[] over it." Heather responded by trying unsuccessfully to protect her phone from him, receiving injuries in the process that were serious enough to send her to the emergency room.

Alaska law specifically entitles a person to use non-deadly force to the extent the person believes it necessary to prevent the "unlawful taking or damaging of property."[22] Heather's unsuccessful effort to keep Justin from taking her phone thus cannot qualify as the type of "mutual combat" that could transform Justin's actions from an attempted theft and subsequent assault[23] into disorderly conduct. The court's finding that the incident amounted to disorderly conduct and therefore did not qualify as a crime of domestic violence was clearly erroneous.

---

[20] *See* AS 11.81.350(a) (authorizing use of force in defense of property).

[21] *See* AS 11.61.110(a)(5) (defining disorderly conduct to include "fighting other than in self-defense").

[22] AS 11.81.350(a)

[23] *See* AS 11.41.230(a)(1), (3) (defining assault in the fourth degree as "recklessly caus[ing] physical injury to another person" or "recklessly plac[ing] another person in fear of imminent physical injury" by words or other conduct).

**B.  The Superior Court Did Not Err When It Found That The November 2016 Incident Did Not Constitute An Act Of Domestic Violence.**

Heather argues the superior court also erred when it held that the November 2016 incident was not an act of domestic violence.  She asserts that the court's credibility "determination . . . [was] contrary to the actual evidence."  She argues that Justin committed sexual assault in either the first or second degree because his conduct was "directly coercive" and he continued to have sex with her "in utter disregard of [her] withdrawal of consent."

Justin argues that there was no evidence that he and Heather had sex without her consent, pointing to the lack of evidence that he "used force" or "threatened [Heather with] death, imminent physical injury, or kidnapping," or that Heather was incapacitated.  He also argues that his initial confusion and uncertainty regarding Heather's reaction does not establish that he acted with a reckless disregard for Heather's lack of consent.  He asserts that the superior court correctly found that Heather "had not met her burden of proof."

First-degree sexual assault is defined as "engag[ing] in sexual penetration with another person without consent of that person."[24]  Alaska Statute 11.41.470(8) defines "without consent" as meaning that a person "with or without resisting, is coerced by the use of force . . . or by the express or implied threat of death, imminent physical injury, or kidnapping" or the person is "incapacitated as a result of an act of the" perpetrator.  Proof that a sexual act occurred "without consent" requires showing that the offender "recklessly disregarded" the victim's "lack of consent."[25]  When we review the superior court's factual findings we accord them " 'particular deference' . . . when they

---

[24]  AS 11.41.410(a).

[25]  *Reynolds v. State*, 664 P.2d 621, 625 (Alaska App. 1983).

are based primarily on oral testimony"[26] because the superior court "saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions."[27]

The court heard conflicting accounts of the November incident. Justin testified that Heather "agreed to [sex]" and it was "consensual." Heather testified that Justin "rush[ed]" her and she "totally wasn't ready," but that she said "[o]kay" as long as he "g[a]ve [her] a minute." She did not testify that she initially told Justin she did not want to have sex or that he coerced her into having sex, but she did assert that she repeatedly told him to "stop" because he was "hurting [her]." And she testified that she finally "had to fight [Justin] off her." Justin denied that he coerced Heather in any way and testified that although he was "confused" after "she started . . . freaking out" that he "did [stop] . . . once [he] realized" what was going on. Justin testified that Heather "was telling [him] to get off her" and he did after "several strokes."

In its findings of fact the court referred to the "[c]redibility standards" it had discussed earlier in its decision where it had noted that it "may consider anything that reasonably helps it to evaluate the testimony." The court observed that "[o]ne consideration [in determining credibility] is whether a person's testimony is consistent with other evidence and believable." The court found that Heather's testimony that Justin "sexually assaulted [her] 50 times or more" was not credible. It noted that the parties had "discussed their sex life in some detail"; recognized Justin's failure "by a long shot" to meet Heather's request that he "behave in a more gentlemanly manner" regarding sex; and specifically concluded that their "use of lubricant was . . . not

---

[26] *Collins v. Hall*, 453 P.3d 178, 186 (Alaska 2019) (quoting *Safar v. Wells Fargo Bank, N.A.*, 254 P.3d 1112, 1117 (Alaska 2011)).

[27] *Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980) (citing *B.B. & S. Constr. Co. v. Stone*, 535 P.2d 271, 274 n.4 (Alaska 1975)).

determinative that the act in question was nonconsensual." Based on these findings the court "consequently c[ould] not conclude . . . [Heather] met her burden of proof by a preponderance of the evidence on this issue."

As the superior court made clear, its finding that Heather had not proven that Justin had sexually assaulted her was based upon its finding that she was not credible with respect to her claims of sexual assault "in [the] main or in the specific." It is the superior court's province to make credibility determinations[28] — and we give those determinations "particular deference . . . when they are based primarily on oral testimony."[29] We are not left with a "definite and firm conviction"[30] that the superior court clearly erred when it determined that Heather's claims of sexual assault were not credible and that Justin did not sexually assault her in November 2016.[31]

## C. On Remand The Superior Court Must Reconsider Its Custody Determination.

In its decision the superior court stated that it "cannot conclude the plaintiff has established an incident, or incidents, of domestic violence." But it was error to find that the April 2015 incident was not an incident of domestic violence against Heather.

---

[28]     *Jill Y. v. Casey Y.*, 463 P.3d 833, 841 (Alaska 2020).

[29]     *Collins*, 453 P.3d at 186 (quoting *Safar*, 254 P.3d at 1117).

[30]     *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1089-90 (Alaska 2015) ("We will reverse the superior court's decision only when 'the record shows . . . [the] controlling factual findings are clearly erroneous . . . .' 'A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake.' " (first quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996); then quoting *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002))).

[31]     *See id.* ("Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error." (quoting *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014))).

Alaska Statute 25.24.150(g) creates a rebuttable presumption that prohibits a parent with "a history of perpetrating domestic violence against the other parent" from having custody of a child. "A parent has a history of perpetrating domestic violence" if the court finds either that "during one incident of domestic violence, the parent caused serious physical injury" or "the parent has engaged in more than one incident of domestic violence."[32] Because there was one incident of domestic violence, the superior court must determine on remand whether Justin caused serious physical injury during that incident. If so, the rebuttable presumption applies and requires the court to restrict Justin's contact with the child until he has satisfied the statutory requirements to rebut its application.

If the superior court determines that Justin did not cause serious physical injury during the April 2015 incident, it must still reconsider the custody determination in light of AS 25.24.150(c), which requires the superior court to "determine custody in the accordance with the best interests of the child." The statute specifies factors for the court's consideration, including whether there is "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents."[33] The superior court conducted this analysis, but did not weigh domestic violence as a factor because it concluded that there were no incidents of domestic violence. In light of our determination that the April 2015 incident was an incident of domestic violence, the superior court must reweigh the best interests factors to determine custody.

---

[32]     AS 25.24.150(h).

[33]     AS 25.24.150(c)(7).

## V. CONCLUSION

We AFFIRM the superior court's finding regarding the November 2016 incident. We REVERSE the superior court's finding that the April 2015 incident involving Heather's phone was not a crime of domestic violence and VACATE its related child custody determinations. We REMAND for further proceedings consistent with this opinion.